Mr. Rubin? Yes, thank you, Your Honor. My name is Richard Rubin, and together with Veronica Fabian, trial counsel on this matter, we represent the plaintiff-appellant, Noble Bodine. Your Honors, for seven years, Congress, in conjunction with NHTSA, National Highway Traffic Safety Administration, spent a large amount of energy and a concerted effort to devise, revise, and perfect the Title Disclosure Regulation that's at issue here today. And notwithstanding this focused activity by Congress, the Court below decided that it would not enforce the private right of action to implement the Title Disclosure Rule because it could not determine how that rule favored the purposes of the Act. Now, Your Honor, a federal court is … What's the name of the Act? The Act has two names. It's the Motor Vehicle Information Cost Savings Act, which is the formal name, and its common name is the Autometer Act. NHTSA still refers to it only as the Cost Information Act. A federal court is not at liberty to disregard the plain language of a statute simply because it cannot determine that enforcing the Act serves its purposes. But the paradox here is that the Title Disclosure Rule is a central weapon that Congress has adopted in order to wage the battle on odometer fraud in this country. The Court made no effort … Was there any odometer fraud in this case? Absolutely not. No, sir. This car was a salvaged, rebuilt wreck that was sold at a salvage auction. It had a branded title in accordance with law of a salvage, and the defendant in this case, the used car dealer in Arizona, suppressed that title in giving the disclosures to Ms. Bendu in order to conceal the fact that it was a salvage vehicle. Now, the next, if I can maybe … The nexus with the … We know we have the Seventh Circuit has taken one position on whether you can allege other fraud in an odometer fraud case, and the Eleventh Circuit has taken a different position. So why should we follow the Eleventh instead of the Seventh? I think for two or three reasons at least. First is that the Eleventh Circuit opinion, frankly, is impeccable reasoning that refutes every aspect of the Iofi decision in the Seventh Circuit. And I think evidence of how powerful the Eleventh Circuit opinion is is that no court since Owens was decided two years ago by the Eleventh Circuit, including and specifically the court below, has been able to answer the counterarguments that the Eleventh Circuit has made. It's been done. Yes, sir, there is, but there has not been one so far, and I think the decision below is very indicative of that. The lower court never even looked at the language of the statute. There was not a single word about the private enforcement provision that's at issue here. And the court went specifically and jumped to the conclusion, well, this has nothing to do with odometer fraud, as though that is the methodology that we use in the Federal Courts. The Seventh Circuit paid initial lip service to the plain language of the Act, and then it went right on to its shorthand analysis about how the plain language is not the plain language and that there is some sort of shorthand that we can use. The plainest thing I see in the statute is that the purpose of the chapter refers specifically to odometer. Now, you're referring to a different part of the statute. Maybe you better get to that part of the statute and tell us what's so plain about it. Actually, I'm not. I'm referring to the purposes as well. If you look at the second purpose, you'll see that the specific purpose that Congress mentioned, besides fighting odometer fraud, was providing safeguards. To protect purchasers in the sale of motor vehicles with altered or reset odometers. Exactly. That, I concede, wasn't present in this case. The safeguards are present. If the court below and the Seventh Circuit is correct. Stop right there. Yes, sir. What safeguards are present here which are intended to protect purchasers in the sale of motor vehicles with altered or reset odometers? The title disclosure regulation. The fact and the other. So you think the purpose of the statute is to prevent altered title or failure to give title papers? The purpose of the section is to prevent odometer. The overriding purpose is to prevent odometer fraud. Which doesn't exist here. Which doesn't exist. So that seems to me to be clear language in the statute. You know that. Other than your case. I don't believe that is the case. And again, because, as I pointed out, for example, in our Rule 28J letter from last week, in the Renée case from this Court, quoting from the Supreme Court, that statutory prohibitions often go beyond the principal evil to cover reasonably comparable evils. And it's ultimately the provisions of our laws rather than the principal concerns of our legislatures by which we are governed. In this case, the paradox is that the concern of Congress in 1986 when it passed the Truth and Knowledge Act was the wrath of odometer rollbacks and the loophole, the language of Congress, the loophole, because there was no requirement about how disclosure, odometer disclosure could be made. The other purpose is, again, it's not the clear purposes of the act that we enforce. It's the clear language of the act. And that, Judge Christie, goes to the second part. As you said, we're not looking at the purpose section at the beginning of the act. We're looking at ten at the private remedy section. This says any person who violates any regulation issued by the Secretary with intent to defraud is liable. There is no language, even odometer fraud is not listed, odometer discrepancy is not listed as an object of defraud. It's the means of defraud and the motivation of defraud that Congress has chosen to enact to emphasize in this language. There is not a single reference to what is the purpose of defraud in the civil liability section. So let's assume, for example, that there's a lien on the title. Some states record liens, some don't. It was undisclosed. Under your theory that there would be a private right of federal action under the Odometer Act for that? No, sir. Why? Because there's no intent to defraud. I can't imagine the intent to defraud, actually. To conceal that there's a lien. I mean, perhaps, I guess conceivably. Conceivably, yes. But, yes, I'm not going to say no to that because that's exactly right. It's not just the rental cars and the salvage cars, which are the major focus of the disclosure rule, the Title Disclosure Rule, because they are the area where the propensity for rollback combines with concealing information on the title. But as in the Yazzie case from the District of New Mexico several years ago, the concealment was the fact that the car had been driven on an auto reservation, which many of us know is unpaved roads, very difficult driving, and these are high miles. That is information that's important. And NHTSA has said in its regulations that the purpose of this part, interestingly, this is cited in the owner's decision, but the regulation 580.2 says, the purpose of this part is to provide purchasers of motor vehicles with abdominal information to assist them in determining a vehicle's condition and value. Condition and value are very important. This car was a total wreck. It was a salvage car sold in a salvage auction, undisclosed to Mrs. Beaubien, a grandmother. She paid $20,000 for a car that had been sold for scrap. And that fraud was achieved by the means of suppressing the title in violation of the regulation of the Secretary with intent to defraud. It is a complete fit with the statutory language. And the most important thing is whether we agree, whether the court agrees, whether the Seventh Circuit agrees with the purposes of the act, the real question under the precedent of this court and the Supreme Court is, is this an absurd result? That's the question. The plain language is plain. The only exception, and that is the reason to answer your question why the Seventh Circuit case, why the Eleventh Circuit case is so much stronger and deserves to be followed, is because there is no answer. The defendant in this case has not answered, cannot answer. The lower court has not answered. How you can abandon the plain language of the statute simply because you don't agree with the purposes, you don't see the efficacy. The fact is that this precedent that we abide by here says the plain language controls, the plain language expresses the purpose and the intent of Congress, and the only exception is if enforcing that language would result in an absurd result. What is absurd about providing a private right of action to the 450,000, the latest numbers from NHTSA, is 450,000 low back abominers in this country, 2005 numbers. The government can't enforce that. But the statute is meant to cover. Exactly. You're trying to tell us the statute is not meant to cover just that 450, but some additional group of people who have a title problem. I'm saying the statute is meant, as Congress stated, to be a prophylactic measure to help this war on the 450,000 abominable low backs in this country. It's an essential measure. Suppose a state passed a law that required a title to disclose that the car had been repossessed or had previously been used in drug traffic. That is, in fact, there are cases, Your Honor, that would be covered, yes. And there are cases. There's a case I can't give you the name off the top of my head, but I do know of a case in which the car, in which there was a fraud case, not an abominable case, but a state-of-the-art fraud case, because the car had been used in an undercover drug sting. And the person brought the car, and the people in the neighborhood knew the car as a narcotics police car, and brought the fraud by concealment of material fact, which is what we're talking about here. The title fraud cases are all derived from the common law, fraud by concealment of material fact. And that's right. There is a case that holds that that material fact can be sufficient for a jury to find fraud where the I think we understand your argument. Thank you very much, Your Honor. I'm here for great court this time. Ms. Parker-Perry. Good morning, Your Honors. I'm Rebecca Parker-Perry here on behalf of the appellees. I can't hear you. Can you hear me now? Thank you. As you have stated already, Your Honors, the purpose of the Act is twofold. One, to prevent tampering with odometers, and two, to safeguard purchasers of motor vehicles with altered or misset odometers. That's the stated purpose of the Odometer Act. In 49 U.S.C. 32705, Congress delegated to the Secretary of Transportation the right to set up the way that the cumulative mileage was to be disclosed by the transfer to the transferee at the time of sale. That was the extent of the delegated power to the Secretary of Transportation to set up the means by which that information was to be transferred. And so the Secretary of Transportation did that by saying that the cumulative mileage was to be placed on the certificate of title. So they didn't delegate to the Secretary of Transportation the right to set up entirely new causes of action, which is what plaintiff is suggesting by having it go just to the certificate of title. It still has to be. 32705 delegated it. He came, 49 CFR, and I'm losing these. The Secretary can't create private rights of action. That's left to Congress, right? So we have to look at the Act. Right. But that's what I'm saying. If you look at the Act and you take plaintiff's view of the Act, it does create new private rights of action. If you look at the Act, yes. Yes. And you have to look at the scope of the private right of action that's created, right? Right. 32710 is the private right of action. Okay. It says if a person violates this chapter or a regulation promulgated there under with the intent to defraud, they're liable. But they're referring to, in this case, the specific violation of failing. The prohibition would be failing to disclose the cumulative mileage on the certificate of title. That's the prohibited Act. Let me ask you this. No, I'm sorry. No. Let me ask you this question. Hypothetically, if the complaint in this case had alleged pure odometer fraud, nothing else, that would be sufficient to invoke jurisdiction, correct? Yes, sir. If that occurred, would the plaintiff be able to claim as damages the fraud that they experienced because of other problems with the title? It seems logical to me that they could, right? I would think so. As long as they pled odometer fraud. So they're really, as long as you can get a hook into the statute and you can claim the damages, there's really no functional difference in what they can accomplish indirectly from what they're trying to accomplish directly, is there? Except that they have to prove an intent to defraud as to the mileage. Right. But if they prove that, then you're in agreement. Okay. Even though the real damage is the fact that it's a salvage car, if they can prove intent to an intent to defraud with respect to the odometer that they can claim their own damages. I assume that's correct. Yes. My question was to ask you to assume that the seller of the vehicle actually did not have title and used the ruse of power of attorney and an accurate odometer statement. Would that be actionable under this act? No, I don't believe it would. They could be entirely phony about the fact that they even owned the car as long as they told the truth about accurately reported the odometer reading and used other documentation commonly used in these transactions. Yes, but we're just speaking here strictly about the Federal Odometer Act. So that would be a common law fraud. It could be brought under state law fraud principles, but it wouldn't go within the Odometer Act itself, which requires intent to defraud as to mileage. As long as the seller of a motor vehicle accurately reports the mileage on the vehicle being transferred, it is utterly irrelevant what other fraud may have occurred for the purpose of this act. Yes, Your Honor, I believe that's correct. What are the statute of limitations for fraud in Arizona? Do you know? Right offhand, I couldn't tell you. This is there. This is her only shot because if she loses her federal claim, the state claims to be barred by the statute of limitations likely because this occurred 2004. I couldn't honestly say, Your Honor, what I don't remember. But the statute fraud is limitation. I don't know. Were there state fraud claims alleged as part of this action? Yes, there are. We're pending state claims. And the court declined to exercise federal jurisdiction once you've missed the federal claim. That's that's correct. These cases have to do with the odometer fraud. The Odometer Act date back into the 1970s. There have been cases for over 30 years that have looked to this issue as to whether there must be an intent to defraud as to mileage. And there have been district court cases all over the country that have looked at this. And for all those years, excuse me, all have determined that there has to be an intent to defraud as to mileage. And that was true all the way until the early 2000s when we had the two New Mexico cases, Yasmin Salman and then the 11th Circuit Owens case. It is presumed that the Congress is aware of how courts are interpreting statutes and approves of that interpretation if they don't modify or amend the statutes. And they've been kind of split for a few years now. Is Congress apparently has been motivated enough to fix it one way or the other? Apparently not. There was there were some cases in the 1970s, district court cases. And then there was the one in 1980s, the Michael case. And there have been amendments during that time period where the intent to defraud language was not changed. So we can presume that Congress was aware of those cases and approved of the way courts were interpreting the language. And so it didn't change it. They made other changes to the statute, but not specifically as to that. The Odometer Act adopted. I'm sorry. When was the Odometer Act or these particular amendments adopted? It was originally adopted in the 1970s. It was amended again in the mid 80s or I believe it was around 85, 86. I see a reference here in the photocopy I've got about added public law in 1994. So that may have been a subsequent amendment. At least since the Seventh Circuit and the Eleventh Circuit went their separate ways in 2005. Circuit split has existed for two and a half years now and Congress hasn't done anything. That's correct. That's correct. I think what the Eleventh Circuit did and what plaintiff wishes this circuit to do is focus in on just that one little bit of language, pull it out and look just at that without looking at the statute, the context in which the statute appears, and the whole purpose behind the Odometer Act. It has to be looked at as a whole as opposed to as a singular object. The intent to defraud has to go to the violation of 580.5C that's being alleged here, and that is failing to disclose the odometer mileage on a certificate of title. It's not just failing to disclose a certificate of title for whatever reason. It has to be specifically for that purpose, failing to disclose a mileage on a certificate of title. That was the prohibited conduct. That's where the intent is focused on. And if you look at the Odometer Act and all the subsections. The district court characterizes it this way. Miffelding alleges that the mileage was kept off the title in an attempt to conceal the salvage status quo. In other words, an attempt, there was an attempt to conceal the odometer mileage with a, also the purpose of concealing the salvage. That's the district court's characterization. No, the facts were that he didn't, I'm sorry. He did not understand what they planned. That's what the district court is saying. The district court is making a judgment based on that. And that's a, assuming that that's what they were trying to do, that's a different sort of theory, isn't it? Yes, I'm sorry. They were attempting to. In other words, that there's a concealment of odometer, a concealment of the odometer reading with an ulterior motive of concealing the restored status. But, Ron, in reality, and this is stated in. 12 v. 6. 12 v. 1. 12 v. 1. It was filed as a 12 v. 1. It seems to have been treated as a 12 v. 6. But she did get the disclosure of the mileage on a secure odometer statement. So see, there's no question that she received the correct mileage reading. It just wasn't on the certificate of title. The allegation is that the certificate of title was not disclosed to her because the defendant was allegedly trying to defraud her as to the salvaged status of the vehicle, but not with regard to the mileage. Okay. I think we understand your argument. Thank you for coming in this morning. We'll hear a rebuttal at this time. Thank you, Your Honor. Thank you, Your Honor. I listen carefully, and I hear that there still is no rebuttal to the fact that there is not an absurd result in this case, if one applies the plain language of the statute. I think that is very significant. Prior to 1986, the history of this, in 1972, the Odometer Act was, the Cost of Promotion Act was adopted. In 1986, Congress passed the Truth in Knowledge Act, which is this amendment, the title amendment, and one other change, and that was to increase the criminal penalty. That was the only change. In the Truth in Knowledge Act, interesting, that the Truth in Knowledge Act, the Raleigh Act, had one substantive provision, the title disclosure rule. If that doesn't explain, among other things, that Congress knew that it was fighting odometer fraud by working with NHTSA to promulgate the title disclosure rule, I don't know what does. Most important, though, Congress, NHTSA didn't add a private right of action. Congress didn't add a private right of action in 1986. The private right of action has been there since 72. It says in identical language, the Federal Damage Provision, any person who violates the law or a regulation or an order promulgated by the Department of Treasury with intent to defraud is liable. It's been this way since 1972. There was nothing to amend in 1986. Congress, the IOC decision, the Seventh Circuit, the Court, strangely, at the end, says, well, Congress didn't amend the private right of action provision to put the object of the title disclosure rule in in 1986 when it made these changes. Why? How? There was no need to. There was no limit on the object of the fraud in 1972. There was no limit in 1986. There is no limit today. If Congress had made such a change, as the Seventh Circuit thought was significant, it probably would have, by implication, limited. Certainly, if they're going to say a domino disclosure rule is now actionable, do they have to go back and redo all the work about domino discrepancies themselves? Presumably. But the real point is, if the Seventh Circuit position is followed here, this is a message to Congress that it needs to go back and amend statutes that already cover the evil that it's talking about, that already make actionable violations and make special effort to clarify for the federal courts what they're doing. That is not our system. That is not the way the federal courts interpret or enforce federal laws. It is so important, I'm probably wondering why. Where's the limits? The lower court totally misunderstood the limits. There was some reference about all autofraud would become actionable under this rule. Absolutely not. The only autofraud that would become actionable are those frauds involving the suppression or alteration of title, first of all, which limits them tremendously, and thereby provide that nexus with the domino disclosure that Congress intended. Your Honor, thank you very much. Thank you for your argument. Both sides for your argument. In case this argument will be submitted for decision, have either of you argued a case in front of the United States Supreme Court? No, sir. I'm sorry? Have you ever argued a case in front of the United States Supreme Court? No. You may get a chance. Court stands adjourned. Thank you.
judges: Hawkins, Thomas, Clifton